Case number 253540, Mary Ann Bender v. Village of Mariemont, et al., or Arguments Not to Exceed, 15 minutes per side. Ms. Barbier, you may proceed for the appellant. Thank you. Good afternoon, Your Honor. Katie Barbier on behalf of Appellant, the Village of Mariemont, Officers Nicholas Pitsley and Paul Rennie. I have reserved five minutes for rebuttal. We're here, this case is a qualified immunity appeal. We're here in the denial of qualified immunity to the two officers. Following what the District Court has categorized as a Fourth Amendment unreasonable seizure of property claim. The allegation here was that the officers, Officers Pitsley and Rennie, were confronted by an individual who presented them with some estate and trust documents, informed the officers that there was a person squatting in a deceased relative's condominium in the Village of Mariemont. The officers were, you know, asked, you know, what's the issue here, what can we do for you? The individual said, you know, Kevin Surratt, who is also a defendant in the lawsuit, said to them, you know, I've had interactions with this individual before, I'm concerned about what might evolve as a result of my confronting her with respect to her staying over in a condominium in which she does not have interest in, in which was owned by my deceased aunt. And the officers said, okay, well, you know, that is a practice of the Village of Mariemont to accompany private citizens who are going to confront somebody with respect to the dispute of property. So the officers went with Mr. Surratt to the condominium, were confronted with the plaintiff, Mary Bender, here in this case. The things escalated with respect to the interactions between Mr. Surratt and Ms. Bender, and the officers were there. According to Ms. Bender's testimony that the officers were threatening arrest, that the officers were intimidating presence, that the officers, you know, were kind of hustling her out of the condominium. There was a cell phone that was tossed, according to Ms. Bender, tossed that would belong to Mr. Surratt. The officers issued a disorderly conduct violation, and the officers left the condominium. Ms. Bender's testimony is that she was still on the premises, but not in the condominium. At the time, the officers departed from the premises, that she had gone to a neighbor's house due to the interaction. And we need to take the facts from the perspective of Ms. Bender, correct? Correct. Correct. For purposes, because we're on summary judgment here, Your Honor. So yes, that is where we are. So with respect to this appeal here today, where I'm kind of focusing on with respect to our briefing and the way we're presenting this here at oral argument is that there's two elements to really be considering here is, one, the reasonableness of the officers' interactions in connection with this property dispute, so that there would be no constitutional violation, as well as the lack of what I feel is clearly established law under the qualified immunity analysis here, so that the officer would have known, every reasonable officer would have known that their conduct was unconstitutional. So you acknowledge there's a property interest here? I'm not acknowledging that there's a property interest. The district court determined that there was a voidable but not void interest as a part of Ms. Bender was self-dealing as a trustee with respect to this trust that she was the trustee of. I don't think we could agree with the district court's opinion with respect to that. I think that there are other— Isn't what's relevant whether the officers knew if she had a property interest? Yes, and that's kind of why—I mean, if she had a voidable but void interest. I don't think that's as salient as the fact that the officers were presented with an individual who said to them, hey, my deceased aunt lived in this property. There is a woman who was her caretaker who was staying over. She shouldn't be there. The property is in trust. The trust belongs to the beneficiaries. He showed him some—they showed the officers some probate documents. But Ms. Bender then, when the officers came, Ms. Bender said, hey, I do have a right to be here. Ms. Bender said that she was staying there because she was ill and trying to get back on her feet. You are starting to question what exactly Ms. Bender's position was as to her ability to stay there. I thought that she said that she said that there was a will that gave her powers. I think she talked a bit about wills and trusts and the documents and asked the officers to see what their— I think her testimony was, I asked the officers repeatedly to see their documents ousting me from this property, and they didn't show me that. It turned out, as I understand it, that the will that the person coming, the Surrett fellow coming and wanting to get Bender out of the apartment, the will was one that had been superseded and that actually did not make him an executor. I'm getting into the facts, which I'm not sure that we're supposed to, but you're supposed to take the facts from Ms. Bender's perspective at this point. Right, but I think because you have to, part of the qualified immunity analysis, you have to look at what the officers knew, right? They knew that they hadn't looked at this will. Right, but they knew that there was a court-looking document, an individual who said that I have— Ms. Bender says, I'm entitled to be here. I'm going to move out at the end of the month. I have my things here. I've been sick, and oh, by the way, there's a later will. Let me see this will. So, you know, you're presenting it in a very one-sided way in your client's interest, but I'm not sure that that's the way you're supposed to be looking at this, at this qualified immunity denial state. Well, I don't think all of those facts that you're referring to, I mean, and I know that some of those are true, the fact that there was a, you know, another will. Can I ask, the 2021 will, which is what she referenced, did not give her, nor did she claim it gave her a possessory interest.  And she admits in the request for admissions that she never presented them documents purporting to show the condo was conveyed to a living trust. Correct. And then we have to look at the officer's perception. The facts most favorable to her, but the officer's perception. I'm right on all that, right? Correct. That's what I'm kind of trying to distinguish here. And she doesn't claim title when they ask. She says, I'm staying here because I'm ill.  Okay. And that's what the officers are confronted with. So, as Judge Moore, as you acknowledge, I mean, there are other elements here that she was, you know, potentially a trustee in self-dealing, but that wasn't all discussed with the officers while they were at the property. She didn't show them documents while they were at the property. You know, they came with the information they got from her, with the information they got from Mr. Surrett, and I think that's what goes into the reasonableness element of the constitutional violation. I mean, that's what the courts are looking at, right? That's what they're saying. Were the officers reasonably interpreting the situation? Did they do an investigation into the dispute? You know, were they presenting evidence of ownership? You know, it's just the reasonableness of the officer's conduct in respect to this, and so that's why I think these facts are important with respect to this, because you have to look at whether the officers were confronted with something that they would have appreciated would have been a constitutional violation because they would be, you know, ousting someone with a lawful possessory interest. And I think, so the second element with respect to that, in addition to the reasonableness, is the lack of clearly established law. I mean, there's a case that came out in 2025, Howell v. McCormick, which we recited in our briefs and we relied on heavily in this case. I think this is, you know, almost directly on point, and that was a case where there was a roommate who had, you know, called 911 and said that her roommate and his girlfriend were in the property, that they had control of her vehicle, a Chevy that was in the garage, that she wanted to, you know, they were prohibiting her from getting into the condo, that she wanted to get repossession of her car. The officers in that case came to the scene. There was some other elements. They did a warrantless entry, which is not an issue here, but there were some other elements with respect to the use of marijuana and some other issues. There was threats of violence in that case. But what I think is important for our matter was that the fact that the officers went into the garage where the car was being kept and helped her, it wouldn't start and helped the individual who called 911 push the vehicle out of the garage and onto the driveway so that she could get it out of the, you know, shared residence where she and her roommate were currently residing. And in that case, the court looked at that and said, there's no clearly established law that would alert the officers under this disputed property, this property dispute, that their conduct would have been unconstitutional. And I think that that's extremely similar, I mean, right on point with here, where in 2025 there was no, you know, when this case was decided, there was no case on point. I mean, and how the car was still on the property when the officers left. The car was still on the driveway. It was later driven away by the owner of it, so it left the property. The officers were gone by that time. The officers were gone. And in this case, although Ms. Bender was outside of the condo, she was still in the condominium building when the officers left the property. Had they taken her keys? I mean, is there evidence in the records that they took her keys? Correct. Yeah. But, I mean, I don't really think that that is a distinction that, you know, with respect to the clearly established, that is the, you know, a lynchpin here with respect to that. Because I just really, the way that, you know, the way that the court looked at it was like, if someone calls, you know, 911 and says, or in our case, comes to the police station and says, you know, someone is, you know, has my property or is, you know, lawfully overstaying with respect to this condominium, you know, are you supposed to, you know, what is the level of investigation the officer is supposed to do in order to verify that? And they're like, are you never supposed to respond? Are you supposed to respond only after several days? You know, what is the leeway here? Well, couldn't the, and isn't the law that you can respond to the place and you can then inquire of the person there, and then as an officer you can evaluate the two different positions. Sure. And so there are cases like Cochran and Hensley, as well as your reference to Howell that establish what the law is. So that officers, you know, it would be a very unpleasant society if anyone can go to the police station and say, I have a right to be in somebody else's apartment. And then you can throw out a lawful possessor of that apartment. Correct. I see I'm out of time, Your Honor. I don't know if you want me to respond to you. Well, if you have a response. My comment would be, I think, with respect to that, is that the officers, you know, that's why you have to look at what the officers knew in the investigation. And what officers did. Because on the flip side of that, if you were to say, you know, hey, someone's driving away with my car, and the officers are like, well, I don't have enough information to go on that, then you have a situation where you don't get help. So I think that's where the qualified immunity balance comes in. Thank you. Thank you. May it please the Court, Stephen M. on behalf of the Plaintiff Appellee, Mary Bender, who is here in the Court today. First of all, I don't believe that the Court has jurisdiction over this appeal because the defendant, the appellant, has not accepted the plaintiff's version of the facts, which they are required to do upon an interlocutory appeal like this. What critical fact haven't they accepted? First of all, they haven't accepted that my client had a valid possessory interest in the condo. Did she assert that there to them? Under Hensley, she has to make it clear to them, did she? Yes, she expressed her opposition. Keep in mind, Your Honor, this is a woman who has been living in this condominium for years. Versus Mr. Surratt, I have a lot of sympathy for her. She was taking care of this woman. Surratt was nowhere to be found. But we definitely want, the flip side of what Judge Moore said is we definitely want officers engaged in these situations. I mean, the alternative is officers don't get engaged at all in these situations and they turn violent and other things happen. And here the officers were very passive in the sense that there was no hands-on. She admits that in her deposition. There was nothing like that. What they effectively did that you're claiming is the constitutional violation is took the key. And my question is, did she assert, like where in the record does she say, look, I have a valid possessory interest in this place, right? Because what they know is Surratt presents them a will that shows that she has a possessory interest. She never presents them documents. And she says, I'm staying here until I recover from my illness. She even says she has a house. With respect to your honor. Mr. Surratt did not present to the officers, a will that says he has a possessory interest in the house. They presented the 2015 will that shows he's a beneficiary of. Ms. Cole. That shows only that he is a, one of many beneficiaries. Number one, number two does not even mention the condominium. And number three, he was not the executor of the will. Sure. So I go back to, did she say, I have a valid possessory interest in the condo. I don't think she has to say that your honor, in order for the officer's conduct to be unreasonable, the officers are not presented with any eviction order. The officers are not presented with any repossession. What case, what case says that she doesn't have to convey. How is it clearly established? Cause Hensley says she does. I don't believe Hensley requires that your honor. I don't believe Hensley says that the, if you are being rousted out of residence, that you have to produce a proof to the officers that you have the right to live there. What we have here is Mr. Surrett possessing a, a will that the officer don't even bother to read. It is not a court order. It is not an eviction order. It did not name him as executor and does not even mention the condo. And they did not go there just to keep the peace. They went there, they forced their way in past Mrs. Bender. Again, these are the plainest facts that have to be accepted and that the defendant is not accepting. They ignored her request to see a warrant, to enter the residence that she had a valid right to be in. They asked Mr. Surrett, when do you want her out of here? And when Mr. Surrett says, I want her out of here today. They say to Mrs. Bender, you've got 10 minutes to leave. And then they take her key from her and they go back and they enter a log that reads on the officer. And then Mr. Rennie enters a log that says, what did they do? They assisted that he, Rennie assisted Pitsley in removing Mrs. Bender from the residence. This is not a situation of they're just there to keep the peace. They're repeatedly threatening her with jail and they are taking her key and kicking her out of the apartment, out of the condo. And when the officers finally leave, she's already been ejected from the apartment that, or the condo that she had every legal right to be in. So what do the officers do in this situation? Very simple. What a reasonable officer would do would be to say, go to eviction court. Would be go to eviction court. That's what the eviction courts are for. What the officers did here was in no, in no way shape or form unreasonable. They didn't even go down to the point of actually reading the document that was presented. If they had, they would have said, wait a minute, this document doesn't say your executor. This document doesn't mention this condo. There's no mention of Petrosky Avenue anywhere in this document, but instead they go and they strong arm, Ms. Bender and effect her from a prep premises that she had every right to be in. If the defendant doesn't admit all of these facts, then there's no jurisdiction for this court. If they do admit these facts as they have to, then there's no qualified immunity here because it was clearly established long before 2022 that Ms. Bender had the right to remain in these premises. What's your best case for that? It's a Middall versus three rivers and Cochran versus. Sorry. What's the next one? Cochran versus Gilliam. Okay. Additionally, there's the, uh, Sadal sold out case. So it all is the Supreme court, which you agree that Middall is unpublished, correct? Or am I wrong about that? I believe it's unpublished. Yes. Okay. I believe it's unpublished. Um, so, uh, it was clear, it's clear from these, this long line of cases that she had a right to be there,  remain in the premises, absent a valid court order or exigent circumstances. There's certainly no allegation of exigent circumstances here. Officers who take an active role in an eviction without a specific court order or exigent circumstances are not entitled to qualified immunity. Uh, your honors, I would just ask in conclusion, uh, to take a step back, um, and think about what occurred on that day in May of 2022. You've got an elderly woman who has just lost her friend. She has got a, uh, complete legal right to be in this residence. Uh, this, uh, I would take issue with counsel's reference to self-dealing. The trust that made Mrs. Ben, Ms. Bender, the, uh, trustee gave her broad powers specifically to engage in any activity, exercise any right that the owner of the trust property would have. So obviously the owner of Petrovsky Avenue has the right to inhabit Petrovsky Avenue. She was not engaged in any self-dealing here. She had every right in the world to be there. And suddenly without warning and without any legal right to officers force their way into her residence where she has a right to be having no court order, having nothing but a will that they didn't bother to read and take steps to force her out of the, of the property and a will, by the way, that says nothing whatsoever about the property in question, nothing. And that does, has not been probated, has not, does not name Mr. Surratt as an executor, none of the above. If think about the world that we would live in, if somebody could just walk into a police station, claim that I own the premises, produce some document that's not been authenticated, that is not a court order. And they can use that. The police did not even look at correct. That they didn't even look at, that they didn't even look at. I mean, if we're going to permit this, if we're going to permit the police under these circumstances, armed with nothing but this document that frankly bears no relevance to Petrovsky Avenue whatsoever, and is not a court order of any kind nature whatsoever has not been authenticated in any manner. And on the basis of that can march into and kick somebody out of their apartment. That there is, there's simply no universe in which that's constitutional. And there's no universe in which the officers under those circumstances should be shielded by qualified immunity. There's any number of things these officers could have done and should have done that would have prevented this awful event. And they didn't do any of them. Unless there are further questions. I thank you,  Thank you. Just to address a few things. First, there is jurisdiction for this appeal. This is a denial of qualified immunity. This is an interlocutory appeal. Defendants have accepted the plaintiff's facts. There's no facts that are material to this case that are in dispute. With respect to the possessory interest of the property, that's a legal question about the void and voidable. That's not a question with respect to Mr. and Ms. Benders. What they knew is a factual question about the possessory interest, right?  And that's undisputed. It's what the officers knew. I mean, that's not disputed testimony. They never checked the will, obviously. Correct. So, how, why don't they have to conclude before helping someone that they have a possessory interest? Their testimony is that they were going from the police station to keep the peace, to stand by and make sure things didn't get out of hand when Mr. Surratt, you know, went to confront Ms.  Now, Ms. Bender's testimony, as I said, she feels that the officers were there to oust her, right? So, that's what we're going with respect to that. But the officer's testimony was that we were there, you know. Then why take the key? Why take the key? Yeah. So, they took the key at the end because Mr., you know, I don't, you know, that's a disputed fact. That's Ms. Bender's testimony. The officers, you know, were, I guess, were,  attempting to establish. It's not disputed that they took the key. It is disputed that they took the key. Well, but you have to accept it.  She clearly testifies in the deposition. She does.  that's the, so we're, we're, you know, that's something we have, we're,  with on this appeal, that they took the key. And I guess your question is why. It's difficult to answer to the extent that, you know, the officers maintain that they did not. But if they're keeping the peace, they don't take a side, right? Correct. And I think it was what happened was, is that it's just the situation escalated between the two parties. And the officers got concerned with respect to the, you know, the tempers that were going with both sides, with both Mr. Surratt and Ms. Bender. You know, the cell phone was thrown, were tossed, or,  Ms. Bender's testimony with respect to that.  you know, that. Because it was an underhand toss. Underhand toss. Right. To Mr. Surratt, but it was his property. And the. His property, meaning what? His cell phone that she was tossing. So she was giving it back to him? Well, yeah, she's, that's her testimony that she picked it up off the table or something like that and tossed it to him underhand. And then, and then the, he was going through the house. The officers stayed where they were, you know, they were talking to Ms. Bender and they asked her to gather her things. Mr. Surratt was taking photographs and I guess going through the bedrooms. Yeah. What if someone like, what if someone shows up to judge Moore's question at the police station and says,  this person's wrongfully in my apartment and they want to go find something like, and they have no right to that apartment, kind of like whatever Cochran, I can't remember which case it was in the car, but. And the officers assist without making any determination. Why shouldn't there be some requirement that they make a determination that they have a legitimate possessory interest? I think there is some requirement, but it's okay. So what they do here, I see. I think that's your, your tech, your questions. I think, you know, your honor, I think reflect that they, you know, they talked to Mr. Surratt, they saw a document, whether they looked through it, you know, or not. There was no evidence that they looked through this. Well, right. They looked at it, I guess is what I mean. Like most can be said is that it was presented to them. They saw it. They didn't flip through the pages. Right. And Bender says that there was a later will. And as she told the officers, there was a later will. So how can they be relying on the will or how can you be relying on the will to justify their dispossessing her of the property? I don't believe there's any indication that she told the officers there was another will. I don't believe that's in her testimony. So the, she told the officers when they arrived that she was staying over and she was not well, you know, that she, you know, was, was recovering since. I thought she also claimed she told him there was a 2021 will. It's true. She didn't show it to him, but I thought she said that. I don't, I don't, it may, and maybe I misremembered it,     but I don't believe that there was,  I think there was questions from her perspective of, you know, what are, what are your documents asking from the police officers? What do you have, you know, show me what you have to establish that, you know, you can be here, but I don't, I don't believe there was correspondence between her and the officers with respect to the valid existence of another will. And so I, I still just wanted to comment with respect to. I have the true will. I have the true will. She said that. Okay. So she's at least indicating that the will they're looking at is false and she has the true one. I mean, I guess I don't know what you do with that comment. I mean, that's kind of with respect to the 2015 will, and then I have the true. Well, I don't know that that, you know, leads the officers to believe that there's a subsequent 2021 will. With respect to a governance of the property. I see my time is up. So I just, my request would be that the court would reverse the decision of the trial court with respect to the denial of qualified immunity. Thank you.